UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Abdi F. W., | No. 0:26-cv-208 (KMM/SGE) |
| Petitioner, | |
| v. | **ORDER** |
| Donald J. Trump, et al., | |
| Respondents. | |

---

Abdi F. W. ("Abdi" or "Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2241, requesting immediate release from detention by the Department of Homeland Security's ("DHS") U.S. Immigration and Customs Enforcement ("ICE") agency. Pet., Dkt. 1. As explained below, the petition is granted.

## BACKGROUND

Respondents do not dispute the relevant facts alleged in the Petition, *see* Resp., Dkt. 5, at 1 (citing Pet. ¶ 47), and the Court treats those facts as stipulated to by the parties. Abdi is a native and citizen of Ethiopia. Pet. ¶ 47. He lawfully entered the United States on September 10, 2024 as a refugee. *Id.* ¶ 47. Abdi has lived in the United States since then. *Id.* ¶ 5. In November 2025, Petitioner filed an application to adjust his status to that of a lawful permanent resident ("LPR"), attended a biometrics appointment related to the LPR application the following month, and is awaiting an interview or decision on the application. *Id.* ¶ 47. Abdi has "committed no crime and was suspected of no crime[.]" *Id.* There is no allegation or evidence in the record that Petitioner has been charged with

removability under the laws of the United States. Nor is there any indication that the government has terminated his refugee status.

On January 12, 2026, ICE agents arrested Abdi in Minneapolis. *Id.* ¶¶ 3, 5, 47. Abdi's counsel filed a habeas petition that day. *See id.* A few days later, ICE transferred Petitioner to Houston, Texas, where he remains detained as of the date of this Order. Resp. at 1.[1] In accordance with United States Magistrate Judge Shannon G. Elkins's briefing order, Dkt. 4, Respondents timely filed their answer on January 15, 2026, and Petitioner filed his Reply the following day, Reply, Dkt. 6. Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1159, and Petitioner contends that the government has misread the statute.

## DISCUSSION

A court can issue a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). That power "includes jurisdiction to hear habeas challenges to immigration-related detention." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025). "The

---

[1] The Court has jurisdiction to decide this case despite the current location of Petitioner. *Eubanks v. Wilson*, No. CV 15-2677 (PJS/DTS), 2017 WL 2303506, at *3 (D. Minn. May 1, 2017) ("Those cases which have addressed the issue in this district have found the court . . . retains jurisdiction over the petition even after the prisoner has been transferred outside the territorial jurisdiction of the court.") (citing cases), *report and recommendation adopted,* No. CV 15-2677 (PJS/DTS), 2017 WL 2303963 (D. Minn. May 25, 2017). Respondents do not argue otherwise.

burden is on the petitioner to prove illegal detention by a preponderance of the evidence." *Id.*

This case concerns the government's power to detain a person who has been admitted into the United States as a "refugee,"[2] which requires the Court to consider the unique status of refugees within our complex network of immigration laws. "Admission as a refugee is a distinct lawful immigration status." *Liban G. v. Noem*, No. 26-CV-0301 (SRN/ECW), 2026 WL 125689, at *2 (D. Minn. Jan. 16, 2026). Under the Immigration and Nationality Act (INA), refugees may be admitted to the United States following certain procedures. *See* 8 U.S.C. § 1157; *Liban G.*, 2026 WL 125689, at *2 (citing USCIS, *Refugees*, https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees). Refugees may be conditionally admitted to the United States without presenting a visa upon arrival. *See Azarmanesh v. Bondi*, No. 23-cv-05210-LJC, 2025 WL 965955, at *12 (N.D. Cal. Mar. 31, 2025).

Those who have obtained conditional status as refugees are deemed to have been "admitted." *In re D-K-*, 25 I. & N. Dec. 761, 769 (B.I.A. 2012) ("[W]e conclude that under the language of the [INA] and regulations, and also in view of the context and structure of the provisions at issue, an alien admitted to the United States as a refugee has been 'admitted' for purposes of section 101(a)(13)(A) of the Act."). This means that a refugee's conditional admission can result in two "admissions" to the United States—the original conditional admission, and a later, longer-lasting admission if the refugee is adjusted to

---

[2] The Immigration and Nationality Act sets forth a specific definition of "refugee." 8 U.S.C. § 1101(a)(42).

LPR status. *Id.* at 768 (stating that "a refugee who ultimately becomes a lawful permanent resident will have been 'admitted' twice—first, upon conditional admission under section 207 of the Act, and second, upon reinspection and adjustment to permanent resident status under section 209(a) of the Act[.]").

Moreover, admission as a refugee places limitations on the government's ability to initiate removal proceedings. *See id.* at 765, 769 (holding that, although removal proceedings may be initiated against a refugee whose refugee status has not been terminated, any charges of removability against such a refugee "must be based on the grounds of deportability under section 237 of the [INA]"). Under the law, a refugee's failure to obtain adjustment to LPR status by itself is not grounds for removal.

With these background principles in mind, the Court turns to the statute that Respondents argue gives them the authority to detain Abdi—8 U.S.C. § 1159. However, Respondents point to no case law that supports their interpretation of § 1159 as authorizing continued detention of Abdi.[3] That provision establishes a procedure for refugees to seek adjustment to LPR status after having been physically present in the United States for one year. Under § 1159, a refugee who has been admitted under § 1157, and whose admission has not been terminated, but who has not yet been adjusted to LPR status, "shall, at the end of such year period, return or be returned to the custody of the [DHS] for inspection and

---

[3] Respondents cite only *Omanovic v. Crawford*, No. CV 06-0208-PHX, 2006 WL 2256630 (D. Ariz. Aug. 7, 2006). But *Omanovic* involved a petitioner whose application for adjustment of status had been denied due to the petitioner's criminal convictions, and the government had initiated removal proceedings against the petitioner charging him with removability due to the denial and his prior felonies. *Id.* at *3–4. Neiter of those circumstances are present in Abdi's case.

examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title." 8 U.S.C. § 1159(a)(1); *see also* 8 C.F.R. § 209.1(a)(1). Thus, while § 1159(a) provides for a refugee's return to the custody of DHS, it does so only (1) to allow the government to inspect and examine the refugee for admission; and (2) subject to §§ 1225, 1229a, and 1231.

The statute's plain text and the applicable regulations contemplate a refugee's "return" to the "custody" of DHS for a limited time to serve a specified purpose— inspection and examination. *E.E. v. Bondi*, No. 26-cv-314 (JWB/DTS) (Order (Dkt. 7) at 7) (D. Minn. Jan. 17, 2026) ("The statute . . . permits custody for a specific and limited function: to allow DHS to conduct the inspection necessary to adjudicate adjustment of status under § 1159(a)(2)."); *see also* 8 C.F.R. § 209.1(a)(1) (requiring every refugee to apply "one year after entry in order for USCIS to determine his or her admissibility under [8 U.S.C. § 1182]"). On review, if there are any applicable grounds for removal, "ICE . . . may charge a refugee with removability . . . even if the individual's refugee status has not been terminated," and "USCIS may place the individual in removal proceedings charging applicable grounds of inadmissibility[.]" Pet., Ex. 1 (Dkt. 1-1) ("2010 DHS Guidance") at 2. "Accordingly, upon taking an unadjusted refugee into custody based upon a reasonable belief that he or she is removable, the [ICE Office of Detention and Removal Operations ("DRO")] first must finalize its determination whether to place the individual in removal proceedings . . . and, if so, whether to continue detention." *Id.*

The text of § 1159(a) further makes apparent that continued detention of a refugee following "inspection and examination for admission" under § 1159(a) must flow from

5

§§ 1225, 1229a, and 1231. The Court finds that the record does not support Abdi's continued detention under any of these provisions, and Respondents do not point to any of them to justify such continued detention. First, the mandatory-detention provisions of § 1225 only apply to certain arriving aliens who are inadmissible, 8 U.S.C. § 1225(b)(1), or who are deemed "applicant[s] for admission," *id.* § 1225(b)(2)(A). *See also Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *5–7 (D. Minn. Oct. 1, 2025) (distinguishing between detention under §§ 1225(b)(2) and 1226(a)). Section 1225 cannot justify Abdi's detention because Abdi was conditionally admitted to the United States as a refugee in September 2024, and, therefore, his entry into the country is deemed an "admission" under the INA. *See* 8 U.S.C. § 1101(a)(13)(A); *In re D-K-*, 25 I. & N. at 769. Nothing before the Court suggests that Abdi falls into either category that is subject to mandatory detention under § 1225(b)(1) or 1225(b)(2).

Likewise, § 1231 cannot justify Abdi's continued detention because the government has not shown that he is subject to a final removal order. Section 1231 mandates detention of an alien who has been ordered removed from the United States during the 90-day "removal period," which usually begins on the date that a removal order becomes administratively final. *See* 8 U.S.C. § 1231(a)(1)(A)–(B), (a)(2)(A). It also authorizes detention beyond the 90-day removal period when DHS determines that the person is "a risk to the community or unlikely to comply with the order of removal." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (citing 8 U.S.C. § 1231(a)(6)). Here, § 1231 is entirely inapplicable because, according to the record, Abdi has not been ordered removed from the United States.

6

Lastly, § 1229a, which governs removal proceedings, cannot justify Abdi's continued detention because there is nothing before the Court suggesting that the government has initiated removal proceedings against him. Section 1229a authorizes immigration judges presiding over removal proceedings to decide whether an alien is inadmissible or deportable. 8 U.S.C. § 1229a(a)(1). To initiate such proceedings, the alien must be provided written notice of, among other things, the nature of the proceeding and the alleged basis for seeking removal. 8 U.S.C. § 1229(a)(1)–(2). "While removal proceedings are in progress, most aliens may be released on bond or paroled." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)(2), (c) (1994 ed., Supp. V)). Detention during the pendency of removal proceedings may also be mandatory in certain circumstances that are not applicable to Abdi, such as when the person has been convicted of serious crimes. *See* 8 U.S.C. § 1226(c). But here, where nothing before the Court suggests that Abdi has been placed in removal proceedings, § 1229a is irrelevant and does not justify his continued detention.

Instead, it appears that Respondents consider Abdi's detention an interim status as he awaits a determination on his LPR application. Respondents argue that the Court should deny Abdi's habeas petition because Abdi's status is "preliminary," and his "inspection will occur in due course." Resp. at 2–3. But again, even had he not already applied to adjust his status, a failure to apply for "adjustment of status under [§ 1159] is not a sufficient ground to place [refugees] in removal proceedings, and therefore not a proper basis for detaining them." 2010 DHS Guidance at 2. And "except in case of emergency or other extraordinary circumstances, upon the arrest of an unadjusted refugee upon reasonable

7

belief of removability," ICE must make a prompt determination "whether to release the individual or issue a Notice to Appear (NTA)" that "indicat[es] the removal charge(s) applicable to the alien." *Id.* (stating that the ICE DRO Field Office must make such a determination within "48 hours after the arrest").[4] Respondents cannot justify Abdi's continued detention through an open-ended assurance that they will get around to conducting the inspection and examination required by § 1159(a), which presents their only identified basis for continued detention. *See Corina E. v. Bondi*, No. 26-cv-313 (JWB/DTS), Order (Dkt. 7) at 8 (D. Minn. Jan. 17, 2026) ("Respondents' reassurances that Petitioner's detention 'is not indefinite' and that her 'inspection will occur in due course' also cannot justify detention."); *E.E.*, Order at 7 (same).

In sum, the Court concludes that § 1159(a) does not justify Petitioner's continued detention because he is not detained in accordance with §§ 1225, 1229a, or 1231. Therefore, the Court finds that Petitioner has met his burden to show that he is in custody in violation of the laws of the United States. 28 U.S.C. § 2241(c)(3). As courts within this district have recognized, when there is no valid statutory basis for detention, release is both "an available and appropriate remedy." *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE),

---

[4] Abdi was arrested by ICE on January 12, 2026. By January 15, 2026, Respondents had not conducted the inspection and examination required by § 1159 and represented only that it will occur within an undefined period. This exceeds the 2010 DHS Guidance document, which provides a 48-hour timeline for an inspection and examination. *See* 2010 DHS Guidance at 3 ("If a determination to place an unadjusted refugee in removal proceedings has not been made within the initial 48-hour period discussed above, the DRO Field Office should release the alien with a reminder that the INA imposes an obligation upon him or her to apply for adjustment of status under section 209(A) and to provide DHS with updated address information[.]"). As of today, Respondents have had more than a week to conduct the required examination, and they do not claim to have done so.

2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (citing cases). Here, the Court finds that Respondents must promptly complete Abdi's inspection and examination, failing which, they must release him. *See Corina E.*, Order at 9 (finding that "conditional relief" was appropriate in a case involving continued detention under § 1159(a)).

## ORDER

For the reasons stated above, and based on the entire record, **IT IS HEREBY ORDERED THAT**

1. Petitioner Abdi F. W.'s Petition for Writ of Habeas Corpus is **GRANTED in part** as set forth herein.

2. Respondents shall, **within three days of this Order**, either:

    a. Complete inspection and examination of Petitioner Abdi F. W. pursuant to 8 U.S.C. § 1159(a), and file a notice confirming that inspection has been completed, identifying the outcome, and stating whether Respondents contend that continued detention is authorized on a specified lawful basis; or

    b. Immediately release Petitioner from custody in Minnesota, and file a notice confirming the date, time, and location of release.

**Let Judgment be entered accordingly.**

Date: January 21, 2026

s/Katherine M. Menendez<br>
Katherine M. Menendez<br>
United States District Judge